**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JPMCC 2007-C1 Grasslawn Lodging, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Randal G. Dix, an unmarried individual; Michael J. Hanson and Christine Hanson, as husband and wife,<br><br>Defendants. | No. CV-11-00017-TUC-CKJ<br><br>**ORDER** |

Pending before this Court are Plaintiff's and Defendant Randal Dix's cross-motions for summary judgment. (Docs. 29, 36). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv. 7.2(f).

*I.   Factual Background[1]*

On or about December 5, 2007, JP Morgan Chase Bank, N.A., ("Original Lender"), Transwest Hilton Head Property, LLC and Transwest Tucson Property, LLC (collectively "Borrowers") executed a loan agreement . (Plaintiff's Statement of Facts at ¶1)("PSOF"). Pursuant to the Loan agreement, the Original Lender agreed to advance a total of $209,000,000 to the Borrowers. *Id*. The proceeds of the loan were used for the acquisition of two hotels. *Id.* at ¶3.

On December 5, 2007, the Borrowers executed two promissory notes for the benefit of the Original Lender, Promissory Note A-1 in the amount of $105,000,000 and

---

[1] The factual background consists of the undisputed facts, except where otherwise noted.

Promissory Note A-2 in the amount of $104,000,000. *Id*. at ¶4.

On December 5, 2007, Transwest Tucson Property, LLC executed a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (collectively "Tucson Deed of Trust") for the benefit of the Original Lender together with its successors and/or its assigns. *Id*. at ¶6. Transwest Hilton Head Property, LLC executed a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (collectively "Hilton Head Mortgage") for the benefit of the Original Lender and its successors and/or its assigns. *Id*. at ¶8.

Also on December 5, 2007, Defendant Randal G. Dix ("Defendant") executed and delivered a Guaranty of Recourse Obligations of Borrower ("Guarantee") for the benefit of the Original Lender. *Id*. at ¶10. The Guarantee was signed by Defendant in his individual capacity. *Id*. It provides that it was executed to induce the Original Lender to lend $209,000,000 to the Borrowers.[2] It further provides that it is advanced pursuant to the Loan Agreement, between Borrower and the Original Lender, and is "evidenced by the Note … and the other Loan Documents (as defined in the Loan Agreement)." *Id*. at ¶¶11, 13, 25 *see also* (Doc. 31-9). This Guarantee provides that Defendant "absolutely and unconditionally, jointly and severally, guarantees to the lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower." *Id*. at ¶15; *see also* (Doc. 31-9). The Guarantee defines the term "Guaranteed Recourse Obligations of Borrower" as "all [the] obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to the Note, the Loan Agreement, or the other Loan Documents. *Id*. at ¶16; *see also* (Doc. 31-9).

The Guarantee expressly provides:

> This is a guaranty of payment and not of collection and upon any default of Borrower under the Note, the Loan Agreement, or the other Loan Documents, Lender may, at its option, proceed directly and at once, without

---

[2] Defendant denies that the Guarantee was entered into to induce the Original Lender to lend to the Borrowers. (Defendant's Controverting Statement of Facts at ¶13)("DCSOF"). However, Defendant admits that the Guarantee speaks for itself, *Id.* at ¶12) and the Guarantee specifically provides in its first paragraph that it is being executed to induce the Original Lender to loan $209,000,000 to the Borrowers. (Doc. 31-9).

notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the Properties or other collateral for the Loan.

(Doc. 31-9).  Addressing the effect of the commencement of a case under the Bankruptcy Code, the Guarantee provides:

> Guarantor further agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired … (e) by reason of the commencement of a case under the Bankruptcy Code by or against any person obligated under the Note, the Loan Agreement or the other Loan Documents… It is further understood, that if Borrower shall have taken advantage of or be subject to the protection of any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to declare the Debt due and payable on the happening of any default or event by which under the terms of the Note, the Loan Agreement or the other Loan Documents, the Debt shall become due and payable, Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.[3]

(Doc. 31-9).  The Guarantee defines the term "Lender" to include the Original Lender as well as "its successors and assigns, to whose favor the provisions of this Guaranty shall also inure." *Id*.

On December 20, 2007, the Original Lender endorsed Promissory Note A-1, assigned the Tucson Deed of Trust, assigned the Hilton Head Mortgage and assigned the Loan, to Wells Fargo Bank, N.A. as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-C1, Commercial Mortgage Pass Through Certificates, Series 2007-1, ("Assignee 1.").  (PSOF at ¶22).  The assignment of the loan included "without limitation all of [Original Lender's] right, title and interest in any claims, collateral, insurance policies, certifications of deposit, letter of credit, escrow

---

[3] Defendant does not dispute that this clause is contained within the Guarantee he signed, however, he argues that it is an impermissible *ipso facto clause*.  (DCSOF at ¶17).

accounts, performance bonds, demands, causes of action and any other collateral arising out of and/or executed and/or delivered in or to or with respect to the Loan, together with any other documents or instruments executed and/or delivered in connection with or otherwise related to the Loan." (Doc. 31-14). On May 8, 2008, the Original Lender endorsed Promissory Note A-2 to the order of LaSalle Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2008-C2, Commercial Mortgage Pass Through Certificates, Series 2008-C2 ("Assignee 2."). (PSOF at ¶22).

On October 27, 2010, Assignee 1 endorsed Promissory Note A-1 to the order of Plaintiff. *Id*. at ¶23. Wells Fargo Bank, N.A., as trustee for Assignee 1, then assigned the Tucson Deed of Trust, the Hilton Head Mortgage, "and all other loan documents executed in connection therewith as such documents may have been amended, assumed, consolidated, modified and/or assigned are collectively assigned (the 'Other Loan Documents')" to the Plaintiff. *Id*. *see also* (Docs. 31-17, 31-18). On November 10, 2010, Bank of America, N.A., as successor by merger to LaSalle Bank National Association, endorsed Promissory Note A-2 to the order of the Plaintiff.[4] *Id*.

The term "loan documents" as defined in the Loan Agreement includes the Loan "Agreement, the Note, the Security Instruments, the Assignments of Leases, the Environmental Indemnity, the Assignments of Management Agreement, the Guaranty and all other documents executed and/or delivered in connection with the Loan." *Id*. at 25 *see also* (Doc. 31-1).

Section 8.1(a) of the Loan Agreement lists the events constituting default. (PSOF at ¶29). Events of Default include the following: "(i) if any portion of the Debt is not paid on or before the date which is five (5) Business Days after the same is due and payable … (vii) … or if any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy Code, or any similar federal or State law, shall be filed by or against, consented to, or acquiesced in by, Borrower, Principal, Guarantor, or other such

---

[4] Defendant does not dispute that these assignments took place, however he denies that the Guaranty was assigned to the Plaintiff. (DCSOF at ¶¶22, 23).

- 4 -

guarantor." (Doc. 31-2, p. 103). The Loan Agreement prohibits the Original Lender from enforcing the provisions of the Loan Documents through an action for a money judgment against the Borrowers. (PSOF at ¶30). However, "the agreement of Lender not to pursue recourse liability … SHALL BECOME NULL AND VOID and shall be of no further force and effect … if any Individual Property or any part thereof shall become an asset in (A) a voluntary bankruptcy or insolvency proceeding." (Doc. 31-2, p. 113)(emphasis in original).

On November 17, 2010, the Borrowers filed voluntary reorganization petitions pursuant to Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona. (Defendant's Statement of Facts at ¶11)("DSOF"). As part of the bankruptcy cases, the two hotels acquired from the proceeds of the loan, became assets in the voluntary bankruptcy proceedings. (PSOF at ¶33).

As of February 11, 2011, the total amount due to Plaintiff under the Note, Loan Agreement and other Loan Documents was $307,173,991.57 including advanced principle, accrued interest, late charges, prepayment premiums and other chargeable expenses. *Id*. at 34. On September 13, 2011, the Plaintiff made an election in the Bankruptcy proceeding, pursuant to 11 U.S.C. §1111(b) to treat its entire claim as secured. (DSOF at ¶15). As a result of this election and pursuant to the Borrower's plan which was confirmed on December 30, 2011 by the Bankruptcy Court, the Plaintiff's claim will be paid in full by the Borrowers.[5] *Id*. at ¶16. Further, according to Defendant the hotels have since been transferred and are no longer assets of the bankruptcy estate.[6] *Id*. at ¶18.

---

[5] Plaintiff disputes this fact and alleges that Defendant has failed to provide sufficient evidence pursuant to Rule 56(c), Fed.R.Civ.P., to support the allegation that Plaintiff's claim will be paid in full. (Plaintiff's Controverting Statement of Facts at ¶16)(hereafter PCSOF).

[6] Plaintiff asserts that pursuant to the confirmed Reorganization Plan, the Hotels were not transferred; rather, the membership interests in the Hotels were transferred. Further pursuant to the confirmed Reorganization Plan at §14.3, and pursuant to 11 U.S.C. §1141(b), the confirmation of the Reorganization Plan "vests all of the property of the estate in the debtor." (PCSOF at ¶18)

- 5 -

## II. *Procedural History*

On January 7, 2011, Plaintiff filed a Complaint for Breach of Guaranty against Randal G. Dix, Michael J. Hanson and Christine Hanson. (Doc. 1). On April 2, 2012, Defendant Randal G. Dix filed his Answer. (Doc. 20). Plaintiff filed a Stipulation of Dismissal for Defendants Michael J. Hanson and Christine Hanson on July 17, 2012. (Doc. 28). Then, on July 26, 2012, Plaintiff filed a Motion for Summary Judgment. (Doc. 29).

The Court granted Plaintiff's Stipulation of Dismissal on July 31, 2012. (Doc. 32). On August 28, 2012, Defendant filed a Response to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment. (Docs. 34, 36). Plaintiff filed its Reply to Defendant's response to Plaintiff's Motion for Summary Judgment and a Response to Defendant's Cross-Motion for Summary Judgment on October 1, 2012. (Docs. 43, 44). On October 22, 2012, Defendant filed a Reply. (Doc. 47).

On November 21, 2012, Plaintiff filed a Motion for Leave to File a Sur-Reply to Defendant's Reply Brief. (Doc. 50). Plaintiff argued that Defendant had raised a new argument in his Reply and Plaintiff requested an opportunity to respond. On December 12, 2012, the Court granted Plaintiff's request to file a Sur-Reply. (Doc. 51). Plaintiff filed its Sur-Reply on December 19, 2012.

## III. *Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510, internal quotes omitted. The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude the entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23. In opposing summary judgment, a plaintiff is not entitled to rely on the allegations of his complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial. *Id.* Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d 626, 631 (9th Cir. 1987).

Additionally, the Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to

constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken).

*IV.   Analysis*

Plaintiff argues that the Guaranty is governed by New York law. The Guaranty at issue contains an express choice of law provision which provides: "[t]his Guaranty shall be governed, construed, and interpreted as to validity, enforcement and in all other respects, in accordance with the laws of the State of New York." (Doc. 31-9). Arizona law recognizes that choice of law agreements should be given effect. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 268 ¶ 12, 77 P.3d 439, 443 (2003). Moreover, Defendant does not dispute that the Guaranty is governed by New York law. As such, since this action concerns the enforceability of the Guaranty, New York law should apply to this cause of action.

Pursuant to New York law, in order to establish summary judgment upon a written guaranty, "the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee. *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305, 739 N.Y.S.2d 572 (N.Y. App. Div. 2002) *citing City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71, 681 N.Y.S.2d 251 (N.Y. App. Div. 1998).

Defendant admits that he signed the Guaranty and that the Guaranty speaks for itself. He does not dispute that the language in the Guaranty establishes the existence of an absolute and unconditional Guaranty, nor does he dispute the existence of the underlying debt or the fact that Borrowers defaulted on their payments to Plaintiffs. Further, Defendant does not dispute the fact that he has not made any payments to the Plaintiff. However, Defendant argues that he is not obligated to pay anything pursuant to the Guaranty or the Loan Agreement. He raises several arguments in support of his position; first that the clause in the Loan Agreement that triggered the Guaranty was an unenforceable *ipso facto* clause; second, as a result of the bankruptcy proceeding,

Plaintiff's claim will be paid in full; third, the hotels are no longer property of the bankruptcy estate, thus his obligations under the Guaranty are quashed; and fourth, the Guaranty was never assigned to the Plaintiff.

*Ipso Facto Clause*

The Guaranty signed by Defendant provided that he guaranteed the payment of the recourse obligations of the Borrowers. Defendant argues that he did not make any payments to the Plaintiff because there are no recourse obligations to guaranty. He explains that the debts secured by the Borrowers pursuant to the Loan Agreement were non-recourse. Pursuant to the terms of the Loan Agreement, the Lender is prohibited from enforcing the provisions of the Loan Documents through an action for a money judgment against the Borrowers. *See* (Doc. 31-2)(Sec. 9.4(a) of the Loan Agreement). The Lender may only bring a foreclosure action, an action for specific performance, or another appropriate action to enforce the Agreement. *Id*.

However, pursuant to Section 9.4(c)(ii), "the agreement of Lender not to pursue recourse liability as set forth in subsection (a) … SHALL BECOME NULL AND VOID and shall be of no further force and effect … if any Individual Property or any part thereof shall become an asset in (A) a voluntary bankruptcy or insolvency proceeding." (Doc. 31-2)(Sec. 9.4(c)(ii) of the Loan Agreement)(emphasis in original). Defendant explains that since Sec. 9.4(c)(ii) of the Loan Agreement purports to automatically change the non-recourse obligations of the Borrowers to recourse obligations upon the filing of a voluntary bankruptcy proceeding, it is an unenforceable *ipso facto* clause.

Section 365(e)(1) of the Bankruptcy Code provides:

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on … (B) the commencement of a case under this title.

- 9 -

11 U.S.C. §365(e)(1)(B). Thus, Defendant argues that pursuant to Section 365(e) of the Bankruptcy Code, the *ipso facto* clause in the Loan Agreement is invalid and unenforceable. *See Summit Inv. and Development Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir. 1995)(Bankruptcy Code §365(e) invalidates contractual *ipso facto* provisions); *In re Peaches Records and Tapes, Inc*., 51 B.R. 583, 587, n.6 (B.A.P. 9th Cir. 1985)(Section 365(e)(1) makes *ipso facto* clauses which result in a breach solely due to a bankruptcy filing of a party unenforceable subject to certain exceptions); *In re Child World, Inc.,* 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993)(Section 365 of the Bankruptcy Code abrogates the power of *ipso facto* clauses and no default may occur pursuant to an *ipso facto* clause and no reliance may be made upon an alleged default where the only cause for default is the commencement of a voluntary bankruptcy proceeding). Defendant contends that since the *ipso facto* clause is invalid and unenforceable, there are no recourse obligations to guaranty and Defendant Dix is not liable for any payments to the Plaintiff.

However, section 365(e) of the Bankruptcy Code explicitly provides that it is only applicable to executory contracts or unexpired leases of the debtor. *See* 11 U.S. 365(e)(1); *In re General Growth Properties, Inc., et al*., 451 B.R. 323, 329 (Bankr. S.D.N.Y. 2011). While the Bankruptcy Code does not define the term executory contract, the term has been defined as a contract on "which performance is due to some extent on both sides." *N.L.R.B v. Bildisco and Bildisco*, 465 U.S. 513, 522, n.6, 104 S.Ct. 1188 (1984). Plaintiff argues that performance on the part of the lender was fulfilled when the Original Lender funded the loan, which was prior to the petition for Bankruptcy.[7] Since the lender already advanced funds there are no remaining material obligations of the lender, thus there could be no failure on the lender's performance that would excuse the Borrowers from having to perform, i.e. repay the loan. *See In re Saint Vincent's Catholic Medical Centers of New York,* 440 B.R. 587, 601 (Bankr. S.D.N.Y. 2010)(discussing the *Countryman* definition of an executory contract as a "contract under which the obligation of both the bankrupt and the other party to the contract are so far

---

[7] Defendant does not dispute that the funds from the loan were received by Borrowers prior to Borrowers filing a petition for bankruptcy.

- 10 -

unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.").

Defendant has not identified any potential obligations of the lender that would excuse the Borrower's obligations to perform. Accordingly the Court finds that the Loan Agreement at issue is not an executory contract and thus Section 365(e)(1) of the Bankruptcy Code does not apply.[8] Further, while *ipso facto* clauses are generally disfavored, *see General Motors Acceptance Corp. v. Rose,* 21 B.R. 272, 276 (Bankr.D.N.J. 1982), pursuant to New York law, such clauses are not invalid unless contained in an executory contract or unexpired lease.[9] *See In re Growth Properties, Inc.,* 451 B.R. 323, 330 (Bankr. S.D.N.Y. 2011).

*Lender's 11 U.S.C. §1111(b) Election Resulted in Full Payment*

As a result of the Chapter 11 Bankruptcy proceeding, Plaintiff's debt was treated as a secured claim. (DSOF at ¶15). Defendant argues that since Plaintiff's claim is secured, it will be paid in full and thus he is not liable for the amount due to Plaintiff. However, Defendant does not provide any legal authority to support his position that as a result of Plaintiff's claim being treated as secured in the Borrower's Chapter 11 Bankruptcy proceeding, the guarantor is absolved of liability.

Plaintiff argues that while the loan is a secured claim, the payments owed to Plaintiff are limited to the value of the collateral used to secure the claim. Further, the Plan of Reorganization constitutes a payment plan that will last 21 years. As such, Plaintiff has not been paid in full and could not be paid in full until 2032, assuming the debtor made every payment. Thus, Plaintiff argues that it is not precluded from pursuing its claim against the Guarantor. This Court agrees with the Plaintiff.

---

[8] Defendant does not provide any factual basis in any of his filings to support the proposition that the Loan Agreement was an executory contract.

[9] Defendant has not claimed that the Loan Agreement is an unexpired lease and there is no evidence in the record to support such an assertion.

- 11 -

"New York law permits the enforcement of agreements that impose liability on guarantors when a borrower files for bankruptcy." *In re South Side House, LLC,* 470 B.R. 659, 676 (Bankr. E.D.N.Y. 2012). The Guaranty signed by the Defendant explicitly provides that the Guaranty "shall in no way be terminated, affected or impaired … (e) by reason of the commencement of a case under the Bankruptcy Code." (Doc. 31-9). "While a bankruptcy case may result in the discharge of the debtor's obligations or impair the claim of a creditor, a non-debtor guarantor's liability is not modified by the bankruptcy process, and the creditor retains its rights against the non-debtor guarantor outside of the bankruptcy case." *In re South Side House, LLC,* 470 B.R. at 673.

Moreover, the Guaranty expressly provides that it is a guaranty of payment as opposed to a guaranty of collection. Pursuant to New York law, a guaranty of collection only binds the guarantor to pay if all attempts to obtain payment from the debtor have failed, however, a guaranty of payment binds the guarantor to pay immediately upon default of the debtor. *General Phoenix Corp. v. Cabot*, 300 N.Y. 87, 92, 89 N.E. 238, 241 (1949). Accordingly, since the Borrowers defaulted when they filed for bankruptcy and Defendant endorsed a guaranty of payment, the Plaintiff need not attempt to obtain payment or wait to receive payment from the Borrowers, prior to collecting from the guarantor.

*Hotels are no Longer Property of Bankruptcy Estate*

Pursuant to the *ipso facto* clause in the Loan Agreement, the Original Lender had authority to pursue recourse liability against the Borrowers, thus triggering the Guaranty, if any property became an asset in a voluntary bankruptcy proceeding. *See* (Doc. 31-2, p. 113). After the Borrower's filed for bankruptcy, all of the debtor's property, including the hotels, became property, of the bankruptcy estate. Then, on December 30, 2011, the Borrowers confirmed their Chapter 11 Plans and the hotels were transferred to a third party.[10] Thus, Defendant claims that since the hotels are no longer the property of the

---

[10] Plaintiff asserts that pursuant to the confirmed Reorganization Plan, the hotels

bankruptcy estate, the condition that triggered the Guaranty has been cured and Defendant bears no liability.

A contract that is clear and unambiguous should be enforced according to its terms. *Signature Realty, Inc. v. Tallman*, 2 N.Y.3d 810, 811, 781 N.Y.S.2d 259, 260, 814 N.E.2d 429 (N.Y.Ct.App. 2004). While the Guaranty expressly and unambiguously provides that the lender may declare the debt due and payable against the Guarantor upon the filing of a voluntary petition for bankruptcy by the Borrowers; there is no language contained within the Guaranty to suggest that if the hotels were transferred to a third party, the Guarantor was suddenly absolved of liability. Moreover, Defendant has not provided any legal authority to support his position. Since the Defendant has provided an unconditional guaranty, his liability is clear as a matter of law. *See In re Boco Enterprises, Inc.,* 204 B.R. 407, 415 (Bankr. S.D.N.Y. 1997).

*Guaranty was Never Assigned to Plaintiff*

Defendant argues that Plaintiff was never assigned the Guaranty and thus Plaintiff has no standing to invoke the conditions of the Guaranty.

Since Plaintiff brought this claim against Defendant, Plaintiff bears the burden of proof to establish standing. *See In re Weisband*, 427 B.R. 13, 18 (Bankr. Ariz. 2010). Defendant alleges that Plaintiff has failed to produce any documents evidencing that Plaintiff was the holder or beneficiary of the Guaranty or that the Guaranty was ever transferred to Plaintiff.

The Guaranty signed by the Defendant was initially between Defendant and Michael Hanson[11] as Guarantors, and the Original Lender. It specifically provides that "[e]ach reference herein to Lender shall be deemed to include its successors and assigns to whose favor the provisions of this Guaranty shall also inure." (Doc. 31-9).

---

were not transferred; rather, the membership interests in the Hotels were transferred. (PCSOF at ¶18). However, this distinction has no bearing on the liability of the Guarantor.

[11] Plaintiff voluntarily dismissed Michael Hanson from this action on July 17, 2012. (Doc. 28).

On December 20, 2007, the Original Lender endorsed Promissory Note A-1, assigned the Tucson Deed of Trust, Hilton Head Mortgage and the Loan, to Assignee 1. The assignment of the loan included "without limitation all of [Original Lender's] right, title and interest in any … collateral arising out of and/or executed and/or delivered in or to or with respect to the Loan, together with any other documents or instruments executed and/or delivered in connection with or otherwise related to the Loan." (Doc. 31-14, Omnibus Agreement). On May 8, 2008, the Original Lender endorsed Promissory Note A-2 to the order of Assignee 2.

While the Omnibus Assignment does not expressly identify the Guaranty, it does expressly state that all other documents related to the Loan are transferred. According to the original Loan Agreement, Loan Documents include among other documents, the Guaranty and all other documents executed and/or delivered in connection with the Loan. (Doc. 31-1). Accordingly, while not expressly mentioned, it is evident that the Guaranty was a document related to the loan and was thus transferred from the Original Lender to Assignee 1, pursuant to the Omnibus Agreement. *See* (Doc. 31-14).

On October 27, 2010, Assignee 1 endorsed Promissory Note A-1 to the order of Plaintiff. *Id*. at ¶23. Wells Fargo Bank, N.A., as trustee for Assignee 1, then assigned the Tucson Deed of Trust, the Hilton Head Mortgage, "and all other loan documents executed in connection therewith as such documents may have been amended, assumed, consolidated, modified and/or assigned are collectively assigned (the 'Other Loan Documents')" to the Plaintiff. (Docs. 31-17, 31-18). On November 10, 2010, Bank of America, N.A., as successor by merger to LaSalle Bank National Association, endorsed Promissory Note A-2 to the order of the Plaintiff. Once again, the assignment to the Plaintiff does not expressly identify the Guaranty, however, it does provide that all other loan documents executed in connection with the loan, "the other loan documents" are included in the assignment, which does include the Guaranty.

The Guaranty was executed to induce the original lender to lend $209,000,000 to the Borrowers and is clearly a document executed in connection with the loan. Further, it is expressly identified as a loan document pursuant to the Loan Agreement. Accordingly,

the Court finds that as a matter of law, the Guaranty was assigned to the Plaintiff. Further, there is no dispute of material fact that Defendant executed the guaranty, there is an underlying debt, and Defendant has failed to pay the underlying debt in accordance with the Guaranty.

*Damages*

Plaintiff alleges that as of February 11, 2011, the total amount due to Plaintiff under the Note, Loan Agreement and other Loan Documents was $307,173,991.57, which includes $209,000,000 in advanced principal; $48,325,530.22 in accured interest; $1,705,151.93 in accrued late charges; $51,423,109.67 in accrued prepayment premiums; $450,635.40 in other chargeable expenses; less $1,230,435.65 in escrow and suspense funds and $2,500,000 paid by the Borrowers. (PSOF at ¶34). Defendant does not dispute that this is the amount owed under the Note as of February 11, 2011. (DCSOF at ¶34). Furthermore, Defendant does not provide any basis to contest the amount of damages or the interest rate sought by the Plaintiff.

Accordingly, IT IS ORDERED:

1. Plaintiff's Motion for Summary Judgment (Doc. 29) is GRANTED.

2. Defendant's Cross Motion for Summary Judgment (Doc. 36) is DENIED.

3. Judgment is entered in favor of Plaintiff against Defendant Randal G. Dix. Plaintiff is awarded a total of $307,173,991.57 in damages, plus accrued interest, late fees and other chargeable fees and costs, as set forth in the Loan Agreement, less any payments received in connection with this Loan from February 11, 2011 through the date of judgment. Post judgment interest shall be awarded at the federal judgment rate specified in 28 U.S.C. §1961(a)(1).

4. Any and all requests for attorney's fees for any and all parts of this case shall be made by motion in accordance with Rule 54(d)(2), Fed.R.Civ.P., and L.R.Civ. 54.2.

5. The Clerk of Court is directed to enter judgment accordingly and close its file in this matter.

Dated this 1st day of April, 2013.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge